UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES R. PESCI,

                    Plaintiff,

v.                                                    Case No:  2:10-cv-428-FtM-38DNF

TIM BUDZ, THE GEO GROUP, INC.,
CORRECT CARE SOLUTIONS,
LLC, GEO CARE, LLC, DONALD
SAWYER, MANUEL FERNANDEZ
and CRAIG BELOFF,

                    Defendants.

_____/

**OPINION AND ORDER**[1]

        This matter comes before the Court upon review of the motions to dismiss the

Amended Complaint filed on behalf of defendants Manuel Fernandez (Doc. #84), Correct

Care Solutions LLC, GEO Care, LLC, the GEO Group, Inc. (Doc. #85), and Craig Beloff

(Doc. #86).   The Court also reviews the motions to dismiss the Amended Complaint

and/or for a more definite statement filed on behalf of defendants Timothy Budz (Doc.

#61), and Donald Sawyer (Doc. #87).   Plaintiff filed responses opposing these motions.

See Docs. #64, #89, #90, #91, #92.   These matters are ripe for review.

_____

        [1] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other
documents or Web sites.   These hyperlinks are provided only for users' convenience.
Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.
By allowing hyperlinks to other Web sites, this court does not endorse, recommend,
approve, or guarantee any third parties or the services or products they provide on their
Web sites.   Likewise, the court has no agreements with any of these third parties or their
Web sites.   The court accepts no responsibility for the availability or functionality of any
hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some
other site does not affect the opinion of the court.

**I.**

Plaintiff James Pesci, a civil detainee at the Florida Civil Commitment Center ("FCCC"), initiated this action proceeding *pro se* claiming a violation of his freedom of speech under the First and Fourteenth Amendments. For some years, Plaintiff had published a newsletter called "Duck Soup" at the FCCC that is highly critical of the center, its policies, its personnel, and of other residents who complied with the center's treatment program. In April 2009, Timothy Budz, the facility director (now former director), implemented a policy barring all residents from using paper in the center's computer lab in order to limit "Duck Soup's" circulation, on the rationale that it had disrupted order and discipline at the FCCC, as well as had a powerful adverse effect on the center's capacity to rehabilitate its residents. Thus, Plaintiff sued Budz seeking monetary and injunctive relief. During the course of the litigation, in November 2010, Budz changed the policy adopting a stricter policy that outright banned the newsletter, deeming it "contraband."

The case proceeded to summary judgment. In February 2012, the Court granted the facility director's motion for summary judgment, considering only the April 2009 policy. On appeal, the appellate court determined a modified, Turner[2], rational relation standard applied to a civil detainee's First Amendment claims, essentially adopting the standard of review set forth in this Court's order granting summary judgment. Pesci v. Budz, 730 F.3d 1291 (11th Cir. 2013). Ultimately, however, the appellate court reversed and remanded this Court's decision, directing the Court to develop the facts concerning the November 2010 policy, and to address both the April 2009 policy and the stricter November 2010 policy. Id. at 1292-93. In so doing, the appellate court noted that

---

[2] Turner v. Safley, 482 U.S. 78 (1987).

Plaintiff had not amended his complaint to include the November 2010 policy, but determined that this policy was "clearly placed before the district court" when Plaintiff put the policy before the Court in his motion for a preliminary injunction and referred to the policy in his Pre-trial Narrative Statement.   Id. at 1295.

The Court appointed counsel for Plaintiff and directed counsel to file an Amended Complaint.[3]   Plaintiff is now proceeding on his Amended Complaint that maintains a violation of his rights under the First and Fourteenth Amendments occurred when Budz promulgated the two policies concerning "Duck Soup."   The Amended Complaint adds several new defendants and new claims.   In addition to suing Timothy Budz, the Amended Complaint names the following additional defendants in their individual and official capacities: Donald Sawyer, the current facility director of the FCCC; the GEO Group, Inc., the private corporation under contract with the Florida Department of Children and Families to operate and manage the FCCC; Correct Care Solutions, LLC, a healthcare services provider that recently merged with GEO Care in 2014; GEO Care, LLC., presumably the healthcare services provider at the FCCC; Manuel Fernandez, the Vice President of GEO Care, LLC; and Craig Beloff, Director of Security at the FCCC. Additionally, the Amended Complaint raises new claims of: retaliation in violation of the First Amendment; procedural and substantive due process violations under the Fourteenth Amendment stemming from Plaintiff's thirty-day placement on "wing restriction" upon a guilty finding by the FCCC's Behavior Management Team; false imprisonment stemming from Plaintiff's placement on wing restriction; and, a claim of

---

[3]See Court only docket entries at November 2013 through March 2014,

replevin under Florida law concerning the confiscation of Plaintiff's property, specifically his jump drive that contained copies of "Duck Soup" and other residents' legal documents.

## II.

### A.   Motion for More Definite Statement Standard of Review

Federal Rule of Civil Procedure 12(e) governs motions for a more definite statement.   A rule 12(e) motion is only proper "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonable be required to frame a responsive pleading."   Fed. R. Civ. P. 12(e).   The threshold for a complaint to satisfy Federal Rule of Civil Procedure 8 is "exceedingly low."   Quality Foods De Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A., 711 F.2d 989, 995 (11th Cir. 1983).   A plaintiff is not required to plead a claim with great specificity.   In Re Southwest Banking Cor., 69 F.3d 1539, 1551 (11th Cir. 1995)("[F]or better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon the plaintiffs the burden to plead with greatest specificity they can.").   The federal courts judge pleadings by the notice standard.   Royal Shell Vacations, Inc. v. Scheyndel, 233 F.R.D. 629, 630 (M.D. Fla. 2005)(citing Reich v. Gentle Dental Care of Sarasota, Inc., 1996 WL 78361 (M.D. Fla. Feb. 16, 1996)).   Rule 8 requires in pertinent part that:

> [a] pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain (1) short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short plain statement of the claim, and (3) a demand for judgment for the relief the pleader seeks.   Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a).   Therefore, if the plaintiff's complaint indicates generally the type of litigation involved it is sufficient to put the defendant on notice.   Reich, 1996 WL 783 61 *2.   Consequently, Rule 12(e) motions are disfavored and granted only sparingly.   See Rule 12(e), Federal Rules of Civil Procedure Handbook (2013).

### B.   Motion to Dismiss Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.   La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).   Thus, the Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff.   Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).   Conclusory allegations, however, are not entitled to a presumption of truth.   Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)(discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss.   Randall v. Scott, 610 F.3d 701, 708, n.2 (11th Cir. 2010).   A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678.   The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim.   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16.   Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted).   Thus, "the-defendant-unlawfully harmed me accusation" is insufficient.   Iqbal, 556 U.S. 662, 677.   "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."   Id.   The "[f]actual allegations must be enough to raise a right to relief above the speculative level."   See Twombly, 550 U.S. 544, 545 (abrogating in part Conley v. Gibson, 355 U.S. 41 (1957)).   Additionally, there is no longer a heightened pleading requirement.   Randall, 610 F.3d at 701.

## III.

The Amended Complaint contains the following five counts.   Count One alleges a First and Fourteenth Amendment freedom of speech claim related to policy concerning "Duck Soup," and a retaliation claim based on acts that allegedly occurred after Plaintiff initiated the instant action.   Counts Two and Three allege a Fourteenth Amendment substantive and procedural due process claim involving Plaintiff's alleged false disciplinary infraction and hearing prior to placement in wing restriction.   Count Four alleges a false imprisonment claim stemming from Plaintiff's placement in wing restriction at the FCCC.   And, Count Five alleges a replevin claim under Florida law seeking the return of property deemed contraband, which was confiscated from Plaintiff at the FCCC. The Court will review the applicable law and then address each count.

### A.   Section 1983

As this is a § 1983 action, the initial inquiry must focus on the presence of two essential elements:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or

immunities guaranteed under the Constitution or laws of the United States.

Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001), abrogated other grounds, Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

### B.   Civil detainees at the FCCC are not prisoners

As noted above, Plaintiff is civilly committed, the FCCC is not a prison, and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has recognized that an individual who has been involuntarily civilly confined has liberty interests under the Due Process Clause of the Fourteenth Amendment that "require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Youngberg v. Romeo, 457 U.S. 317, 319 (1982). Thus, the Supreme Court has opined that, at least in regards to certain aspects of their confinement, civil detainees are afforded a higher standard of care than those who are criminally committed.[4] See Id. at 321-322; Dolihite v. Maughon, 74 F.3d 1027, 1041

---

[4]In Youngberg, the issue was whether a severely mentally handicap young man had received proper treatment in a state facility. Id. at 309.

(11th Cir. 1996)(holding that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). See also Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006). Nonetheless, case law relevant to defining the contours of constitutional rights afforded to prisoners is relevant in evaluating a claim brought by a person who is involuntarily civilly committed. Id.

### C.  Corporate and Supervisory Liability

It is well established that there is no vicarious liability, including *respondent superior* in § 1983 actions. Supra at 7. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)(citations omitted). The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Id. (citations omitted). The deprivations that constitute widespread abuse sufficient to notify the supervising official "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. (*Compare* Clark, 840 F.2d at 885 ("[I]t is clear that four cases [alleging a prison policy of disregarding committal orders by state court judges] in four years would have been insufficient to put Evans [commissioner of the Department of Corrections] on notice, especially since the record is clear that such matters were handled at lower administrative levels and would not have come to the attention of Evans.") *with* Holland v. Connors, 491

F.2d 539, 541 (5th Cir. 1974) [5] (per curiam) (The former Fifth Circuit vacated and remanded for factual development the district court's dismissal of a prisoner's section 1983 complaint alleged that the prison superintendent was "legally responsible for these acts of his subordinates, despite the fact that the Superintendent was not present during the illegal questioning, because such practices were so widespread and had been standard procedure at the institution for so long that he was or must have been aware of them.")).

### D.   First Amendment- Freedom of Speech and of Press

As discussed supra, the appellate court determined that a modified version of the Turner test applies to Plaintiff's First Amendment freedom of speech claim.   Supra at 2-3; Pesci, 730 F.3d at 1297.   In evaluating a claim under the Turner test, the Court should consider the following factors:   (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the FCCC residents; (3) whether and the extent to which accommodation of the asserted right will have an impact on facility staff, other residents and the allocation of the facility's resources generally; and, (4) whether the regulation represents an "exaggerated response" to the facility's concerns.   Turner, 482 U.S. at 89-91; Pesci, 730 F.3d 1291; Hakim v. Hicks, 223 F.3d 1244, 1247-48 (11th Cir. 2001).   However, the Turner test is modified in this case to reflect "the salient differences between civil detention and criminal

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

incarceration." Pesci, 730 F.3d at 1297.   FCCC officials cannot limit an FCCC resident's rights in retribution or for general deterrence, which are plainly legitimate justifications for prison regulations.   Id.   Additionally, the Court must continue to exercise judicial restraint and give deference to the professional judgment of FCCC officials.   Id. However, "deference to the professional judgment of the facility administration is not tantamount to carte blanche permission to deny the fundamental rights of free speech and free expression.   Care must be exercised to examine each claim individually and particularly." Id. at 1299.

### E.   First Amendment- Retaliation

In order to state a First Amendment retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected that protected speech; and third, that there was a causal connection between the retaliatory actions and the adverse effect on speech." Marsh v. Fla. Dep't of Corr., 330 F. App'x 179, 183 (11th Cir. 2009) (affirming district court's denial of a retaliation claim alleged by an FCCC resident)(citing Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)).

### F.   Fourteenth Amendment Due Process rights applicable to disciplinary action

As a civilly committed detainee, the Due Process Clause of the Fourteenth Amendment applies to Plaintiff's claims. Dolihite, 74 F.3d 1027, 1041 (11th Cir. 1996); see also Wean v. Budz, 589 F. App'x 488, 489-90 (11th Cir. 2014)(discussing FCCC plaintiff's due process claim and affirming district court's dismissal of FCCC plaintiff's second amended complaint).   The Due Process clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1.   As previously discussed, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 322.   The Eleventh Circuit has held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are 'at least as extensive' as the Eight Amendment 'right of the criminally institutionalized,' and therefore, 'relevant case law in the Eight Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Lavender v. Kearney, 206 F. App'x 860, *2 (11th Cir. 2006)(footnote omitted)(quoting Dolihite, 74 F.3d at 1041)).

"Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Bell v. Wolfish, 441 U.S. 520, 537 (1979); see also Sandin v. Conner, 515 U.S. 472, 483-484 (1995); Wilkinson v. Austin, 545 U.S. 209, 223 (2005). Whether a particular restriction is considered punitive is determined by whether the restriction imposed is for the purpose of punishment or whether it is incidental to some other legitimate governmental purpose. Bell, 441 U.S. at 538.   Restrictions that are imposed in order to manage a facility or maintain the facility's security are examples of permissive restrictions.

## IV.

### A.  Count One

Count One alleges a First and Fourteenth Amendment claim against GEO Group, Inc. ("GEO Group"), Correction Care Solutions, LLC ("Correct Care"), GEO Care, LLC ("GEO Care"), Tim Budz ("Budz"), Donald Sawyer ("Sawyer"), Manual Fernandez ("Fernandez"), and Craig Beloff ("Beloff"). Plaintiff alleges that the April 2009 and November 2010 policies addressing "Duck Soup" violated his First Amendment rights to

freedom of speech and press.   Amended Complaint at ¶¶ 71-73.   Additionally, Plaintiff alleges that unnamed defendants, Ms. Fitzpatrick, Mr. McCawley, and Mr. Snyder, retaliated against him for bringing the instant § 1983 action by filing false disciplinary charges against him on two separate occasions and confiscating his jump drive as contraband on the third occasion.   Id. ¶¶ 74-80.   As a result of the false disciplinary charges, Plaintiff alleges he was subject to a hearing before the Behavioral Management Team (of which only defendant Beloff is alleged to have served), found guilty of the infractions, and placed on wing restriction for thirty days.   Id. at ¶ 80.

### 1.   Defendants GEO Group, Correct Care, and GEO Care

Defendants GEO Group, Correct Care, and GEO Care assert that they should be dismissed from Count One because the Amended Complaint does not allege that they enacted any policies that infringed on Plaintiff's rights.   Doc. #85 at 4.   Instead, it was Budz, as the FCCC's director, that enacted the policies at issue.   Id.   Defendants argue that they are not vicariously liable for the actions of its employees in a § 1983 action.   Id. at 5.

Notably, GEO Group, Correct Care, and GEO Care are not governmental entities, but are private corporations in contract with Florida's Department of Children and Families to operate the FCCC.   "Where the function which is traditionally the exclusive prerogative of the state is performed by a private entity," that private entity, like a municipality, may be held liable under § 1983.   Ancata v. Prison Health Services, 769 F.3d 700, 703 (11th Cir. 1985).   However, to do so, Plaintiff must show that the entity had a "custom or policy that constituted deliberate indifference to that constitutional right."   McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).   "A policy is a decision that is officially adopted by

the [entity], or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]." Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007). The plaintiff must also show that the custom or policy caused the constitutional violation because *respondeat superior* liability is not permitted. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997); supra 7-8.

At issue under the freedom of speech and press claim in Count One are two policies that Budz, the former facility director of the FCCC, implemented limiting and eventually outright banning "Duck Soup." In this case, Budz as the former facility director of the FCCC can be considered an official of such rank that it can be said that he was acting on behalf of GEO Group, Correct Care, and/or GEO Care. Therefore, Defendants GEO Group, Correct Care, and GEO Care's motion is denied with respect to the First Amendment freedom of speech claim in Count One.

Count One also alleges a First Amendment retaliation claim stemming from non-defendants' (Fitzpatrick, McCawley, and Snyder) issuance of disciplinary infractions and confiscation of his jump drive that contained copies of "Duck Soup," respectively. Amended Complaint ¶¶ 74-77. There is no causal connection alleged in the Amended Complaint between these three alleged acts of retaliation by non-defendants and GEO Group, Correct Care, and GEO Care. These three incidents are isolated, unrelated, and not of the nature to constitute a custom. Supra at 8-9. Accordingly, defendants' motion is granted with respect to the retaliation portion of Count One.

### 2. Manuel Fernandez

Defendant Fernandez notes that the Amended Complaint contains no allegation that he had any part in the banning of "Duck Soup." Doc. #84 at 4. Nor is there any

allegation that Fernandez brought the disciplinary charges against Plaintiff, or that Fernandez sat on the disciplinary hearing board.  Id.  Further, there is no allegation that Fernandez even knew about Plaintiff's appeal to the Eleventh Circuit or directed that disciplinary charges be brought against Plaintiff as a result of his appeal to the Eleventh Circuit.  Id.  Lastly, there is no allegation (nor can there be an allegation) that Mr. Fernandez physically works at the FCCC.  Id.  Fernandez asserts that the sole allegations against him are that he is the Senior Vice President of GEO Care, and that he denied Plaintiff's grievance appeals concerning the disciplinary process.  Id.  Fernandez argues that the sole act of denying a grievance does not amount to a constitutional violation because there is no constitutionally protected interest in access to the grievance procedure.  Id. at 5 (citing Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011)). In Response, Plaintiff asserts that FCCC staff retaliated against Plaintiff under Fernandez' supervision.  Doc. #89 at 4.

The Court agrees that Fernandez's motion must be granted with respect to Count One.  Fernandez, as the Vice President of GEO Group, is the most remote supervisory official named as a defendant in this action.   Plaintiff attributes liability on Fernandez due to his alleged denial of a resident grievance.   It is unclear whether Fernandez as the Vice President of the Corporation even had any responsibility whatsoever to review resident grievances from the FCCC.   Nevertheless, filing a grievance with a supervisor does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), overruled other grounds, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent

harm rises to the level of a custom or policy of depriving [residents] of their constitutional rights." Tittle v. Jefferson County Com'n, 729 F.2d 416, 421 (11th Cir. 1994). Based upon the facts in this case, denial of one grievance is insufficient to constitute notice of widespread abuse and failure to correct it. Further, as Fernandez points out, there is no constitutionally protected interest in access to the grievance procedure. Bingham, 654 F.3d at 1177. Fernandez' motion to dismiss Count One is granted.

### 3. Timothy Budz

Budz moves to dismiss the retaliation portion of Count One, or in the alternative moves for a more definite statement. Doc. #61. Budz asserts that the Amended Complaint does not contain any facts that he participated in any alleged retaliatory conduct against the Plaintiff. Id. at 2. In the alternative, Budz requests that Plaintiff provide a more definite statement as to his cause of action against him. Id. at 3-5. In Response, Plaintiff submits that he does allege that Budz retaliated against Plaintiff when Budz issued the November 2010 policy. Doc. #64 at 4-5.

The Court agrees with Budz and finds the retaliation portion of Count One must be dismissed. Nowhere in the Amended Complaint are factual allegations that Budz issued the second policy concerning "Duck Soup" in retaliation for Plaintiff filing the instant action. In fact, to the contrary, the Amended Complaint alleges that Budz issued the second policy because "Duck Soup" "contained false information and that the newsletter caused a hostile atmosphere at the FCCC." Amended Complaint at ¶ 28. "He also believed that the newsletter was interfering with treatment of the residents." Id. Nor does Plaintiff's response arguing to the contrary cite to any paragraph of the Amended Complaint to show any factual allegation that Budz issued the second policy in retaliation.

See generally Doc. #64.   Consequently, Budz' motion to dismiss the retaliation portion of Count One is granted.

### 4.  Donald Sawyer

Sawyer, the current FCCC director, moves to dismiss Count One, or in the alternative moves for a more definite statement.   See Doc. #87.   Sawyer asserts that "there is no allegation   . . .   that [he] played any role in enacting the policy that banned "Duck Soup."   Id. at 4.   Sawyer further points out that there is no allegation that he personally participated in any retaliatory acts against Plaintiff.   Id.   Sawyer continues by noting that there is no allegation that he brought the disciplinary charges against Plaintiff or that he sat on the disciplinary board.   Id.   Rather, the sole allegations against Sawyer are that the policy banning "Duck Soup" continues under his administration and that he denied Plaintiff's grievance appeals.

The Amended Complaint contains no allegations that Sawyer personally participated in either the enactment of the policy concerning "Duck Soup," or in the alleged acts of retaliation.   As previously stated, to impute liability on a supervisory official, who was not personally involved, a plaintiff must show a causal connection between the supervisor and the alleged unconstitutional acts.   The causal connection can be established if the supervisor directed his subordinates to take the action they did, or when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.   The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

The Court finds Sawyer's motion is due to be granted on Count One.   Sawyer took over Budz's position as the current director at the FCCC.   The Amended Complaint contains no allegations that Sawyer had any involvement in enacting the policies concerning "Duck Soup."   Nor does Sawyer need to be named as a defendant because Budz's policy remains in effect at the FCCC because Plaintiff sues Budz in his official and individual capacities.   Thus, the action is essentially against the entity that employs Budz, i.e. GEO Group.   Kentucky v. Graham, 473 U.S. 159, (1985).   Thus, Sawyer's motion is granted with respect to the free speech portion of Ground One.

Arguably, the grievance Plaintiff notified Sawyer about the alleged retaliation when he sent Sawyer a grievance concerning the two false disciplinary reports and confiscation of his jump drive.   And, according to the Amended Complaint, Sawyer denied Plaintiff's grievance.   However, these isolated incidents mentioned in the Amended Complaint do not constitute "widespread abuse" that is "obvious, flagrant, rampant, and of a continued duration"[6] to justify supervisory liability.   Supra at 14-15.   Therefore, the retaliation portion of Count One is dismissed as to Sawyer.

---

[6]Noteworthy are the facts contained in the Amended Complaint showing that Snyder confiscated Plaintiff's jump drive pursuant to Budz' policy because that jump drive contained copies of "Duck Soup."   Amended Complaint ¶ 32; see also Id. at ¶ 51 (noting confiscation of three jump drives--one of which had issues of "Duck Soup" and other residents' legal work, which is contraband.).   Thus, the facts alleged show at least one jump drive was confiscated pursuant to the policy at issue in this case, not in retaliation. See also Pesci v. Budz, Case No. 2:12-cv-227-FTM-29SPC, 2012 WL 4856746 (M.D. Fla. Oct. 12, 2012)(noting that a "prisoner cannot maintain a retaliation claim when he is convicted of the actual behavior violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction)(quoting O'Bryant v. Finch, 637 F.3d 12017, 1215 (11th Cir. 2011)).

### 5.   Craig Beloff

Beloff, the current director of Security at the FCCC, moves to dismiss Count One in its entirety.   Beloff argues that the Amended Complaint contains no facts alleging that he was involved with the banning of "Duck Soup," or that he retaliated against Plaintiff. Doc. #86 at 4.   In fact, Beloff points out that his name is not even mentioned in Count One.   Id.   Instead, the Amended Complaint refers to the facts alleged in paragraphs 1 through 68.   Id.

In response, Plaintiff asserts that when he received the disciplinary infraction for writing Governor Crist, non-defendant Lawrenz issued the disciplinary report at Beloff's direction.   Doc. #91 at 3 (citing ¶¶33-36).   Further, Plaintiff asserts that Beloff presided over the Behavioral Management Hearing that resulted in Plaintiff receiving the thirty-day wing restriction.

Beloff's motion with regard to Count One is granted in part and denied in part.   At the time Budz implemented the policies concerning "Duck Soup," Beloff was not the director of security at the FCCC.   Thus, Beloff's motion is granted with respect to the free speech claim under Count One because there are no facts showing a causal connection between Budz' policies and Beloff.   However, with regard to the retaliation portion of Count One, the Amended Complaint includes facts alleging that Beloff was personally involved because he wrote Plaintiff a disciplinary infraction for writing a letter to Governor Crist, which Plaintiff claims was done in retaliation for filing the instant litigation. Amended Complaint at ¶ 36.   Accordingly, Beloff's motion is denied with respect to the retaliation portion of Count One.

### B.  Counts Two and Three

Counts Two and Three allege a Fourteenth Amendment procedural and substantive due process claim, respectively, against GEO Group, Correct Care, Geo Care, Sawyer, Fernandez, and Beloff stemming from Plaintiff's placement in "segregation," also known as "wing restriction,"[7] without a proper hearing conducted by the Behavioral Management Team.  The Court addresses the claim against defendant Beloff first because he is the only defendant alleged to have personally participated in the disciplinary process.

### 1.  Craig Beloff

Beloff argues that the Court must dismiss Counts Two and Three because the Amended Complaint has not alleged a due process violation.  Doc. #86 at 5-6. Specifically, Beloff argues that Plaintiff has not shown that the complained of wing restriction was a major disruption of his environment, or a dramatic departure from the ordinary conditions of his confinement.  Id. at 6.  In Response, Plaintiff notes that wing restriction did amount to a dramatic departure from the ordinary conditions of his confinement.  Doc. #91 at 6.

The Court notes that Beloff is the only named defendant who wrote one of Plaintiff's disciplinary infractions and participated in Plaintiff's Behavioral Management Hearing. Accepting the facts as true at this stage of the proceedings, the Behavioral Management Team found Plaintiff guilty of infractions without allowing him to enter any evidence

---

[7]The Amended Complaint refers to Plaintiff's placement in "segregation" and "wing restriction."  Segregation is a term more appropriate for penal institution.  Considering Plaintiff is civilly detained at the FCCC, the Court will consistently refer to Plaintiff's "segregation" as a "wing restriction."

whatsoever.   Amended Complaint at ¶ 65.   Thus, the Court finds the Amended Complaint plausibly states a claim under the Fourteenth Amendment and denies Beloff's motion with respect to Counts Two and Three.   See e.g. Burke v. Hayes, Case No. 2:09-cv-635-FtM-29SPC, 2012 WL 4339290 (M.D. Fla. Sept. 20, 2012) (denying defendant's motion to dismiss resident's due process challenge, noting sufficient facts to raise a reasonable expectation that discovery will reveal evidence supporting plaintiff's claim that his placement in secure management or wring restriction was done for punitive purposes); Douse v. Butterworth, Case No. 2:08-cv-29-FtM-29SPC, 2009 WL 2496459 (M.D. Fla. Aug. 13, 2009) (dismissing FCCC resident's due process challenge to a disciplinary proceeding despite allegation that resident was confined with no notice because the exhibits revealed that the plaintiff was placed in secured management confinement while the incident involving Plaintiff and another resident, who were alleged to have engaged in sexual misconduct, could be investigated).

### 2.   GEO Group, Correct Care, GEO Care

Defendants GEO Group, Correct Care, and GEO Care assert that they should be dismissed from Counts Two and Three because the Amended Complaint does not allege that they enacted any policies that infringed on Plaintiff's due process rights.   Doc. #85 at 4.   Defendants argue that they are not vicariously liable for the actions of its employees in a § 1983 action.   Doc. #85 at 5.

A review of the Amended Complaint confirms that Plaintiff appears to attribute liability on GEO Group, Correct Care, or GEO Care, based on FCCC staff's issuance of two disciplinary infractions to Plaintiff, confiscation of his jump drive, his hearing before the Behavioral Management Team, and his placement on a thirty-day wing restriction.

GEO Group, Correct Care, and GEO Care were not personally involved in any of these incidents.   Thus, a causal connection by virtue of a policy or custom must be alleged in the Amended Complaint.   There is no allegation in the Amended Complaint that these incidents occurred due to a policy promulgated by GEO Group, Correct Care, and GEO Care.   To the contrary, the Amended Complaint alleges that polices were violated when these incidents occurred.   Amended Complaint at ¶ 98, ¶106 (stating "Pursuant to DCF policy dictated to GEO, there was no reason to place Mr. Pesci in [wing restriction] prior to his hearing because Mr. Pesci was not a physical threat to himself or others.").   A violation of an entity's own policy does not amount to a violation of the United States Constitution.   Nor are there sufficient facts alleged in the Amended Complaint to show that GEO Group, Correct Care, and GEO Care had a custom of retaliation.   Accordingly, GEO Group, Correct Care, and GEO Care's motion to dismiss with respect to Counts Two and Three is granted.

### 3.   Manuel Fernandez

Fernandez argues that the only allegations in the Amended Complaint involving him are that he is the Vice President for GEO Group and that he denied one of Plaintiff's resident grievances concerning the Behavior Management Team's lack of due process. Doc. #4.   In Response, Plaintiff asserts that Fernandez continued to violate Plaintiff's due process rights during the appeal by denying his resident grievance.   Doc. #89 at 5.

The Court finds Fernandez's motion is due to be granted.   As previously stated, there is no constitutionally protected interest in access to the grievance procedure. Bingham, 654 F.3d at 1177.   Further, denial of one grievance is insufficient to constitute

notice of "widespread abuse" and failure to correct it.   Supra at 14-15.   Fernandez'

motion to dismiss Counts Two and Three is granted.

### 4.  Donald Sawyer

Sawyer points out that the Amended Complaint only alleges that he denied one of

Plaintiff's resident grievances.   Doc. #87 at 6.   Similar to Fernandez's argument, Sawyer

argues that a denial of a grievance does not amount a violation of the Constitution.   Id.

Sawyer asserts that the Amended Complaint fails to allege that he had any part in placing

Plaintiff in wing restriction prior to the Behavior Management Team's finding of guilt.   Id.

In Response, Plaintiff asserts among other things that Sawyer did not respond to his

resident grievance and thus failed to cure the unconstitutional acts that occurred.   Doc.

#92 at 6-7.

The Amended Complaint does not allege that Sawyer participated in Plaintiff's

Behavior Management hearing (as previously stated, Beloff is the only defendant alleged

to have participated in Plaintiff's hearing).   See generally Amended Complaint at ¶38.

Instead, Plaintiff faults Sawyer for not remedying the alleged wrongdoings when he

reviewed Plaintiff's grievance and either failed to respond, or denied it.   As previously

stated, the grievance procedure does not provide a resident with a constitutionally

protected interest.   Bingham, 654 F.3d at 1177.   Moreover, filing a grievance with a

supervisor does not alone make the supervisor liable for the allegedly violative conduct

brought to light by the grievance, even if the grievance is denied.   Supra at 14-15.   The

Amended Complaint does not contain sufficient facts to impute liability on Sawyer, as the

supervisor, related to Plaintiff's disciplinary infractions issued by three different FCCC

staff, or related to his hearing before the Behavioral Management Team.   Accordingly, Sawyer's motion is granted with respect to Grounds Two and Three.

### B.  Count Four

Count Four alleges a claim of false imprisonment against defendants GEO Group, Correct Care, GEO Care, Sawyer, Fernandez, and Beloff stemming from Plaintiff's placement in wing restriction at the FCCC.   All defendants move to dismiss Count Four. See Docs. #84, #85, #86, #87.

In a § 1983 action for false imprisonment, a plaintiff must first show that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).   If a suit is brought prior to invalidation of the challenged conviction or sentence, the suit must be dismissed.   Id. at 487; see also Mitshell v. Donald, 213 F. App'x 920, 922-923 (11th Cir. 2007)(affirming district court's order dismissing prisoner's action for false imprisonment when he failed to allege any facts showing his sentence was successfully vacated).   There are no allegations in the Amended Complaint that any of Plaintiff's disciplinary infractions were reversed, expunged, or otherwise declared invalid.   Accordingly, defendants' respective motions with respect to Count Four are granted.

### C.  Count Five

Count Five alleges a claim of replevin under Florida law against defendants GEO Group, Correct Care, GEO Care, Sawyer, and Fernandez seeking the return of Plaintiff's property (i.e. at least one jump drive), which was confiscated by an unnamed defendant

(Snyder) on or about the time Plaintiff received one of the aforementioned disciplinary reports and placement on wing restriction.   Each defendant moves to dismiss the replevin count due to Plaintiff's failure to allege the specific requirements set forth in § 78.01 of the Florida Statutes.   In Response, Plaintiff asserts he does comply with § 78.01.   See generally    Doc. #92 at 10.   And, to the extent the Court determines the Amended Complaint does not comply with § 78.01, he moves to amend Count Five.   Id. at 11.

Under 28 U.S.C. § 1367, in a case involving original jurisdiction, the district court shall have supplemental jurisdiction over all other claims related thereto.   Thus, the Court has jurisdiction of this claim filed under Florida law.   Nevertheless, the Court finds the Amended Complaint fails to a state a claim for replevin under Florida law and allowing Plaintiff to amend would be futile.   One of the elements of replevin is a statement that the property is "wrongfully detained".   Fla. Stat. § 78.055(3).   A review of the Amended Complaint belies any allegation that Plaintiff's jump drives are wrongfully detained. Instead, the jump drives were confiscated as contraband and/or in violation of at least one of the FCCC policies at issue in this case.   Accordingly, defendants' motions with respect to Count Five are granted and Count Five is dismissed.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Defendant GEO Group, Correct Care, and GEO Care's motion (Doc. #85) is **GRANTED in part and DENIED in part**.   The motion is **granted** with respect to Counts One (First Amendment retaliation portion), Two, Three, Four, and Five; and **denied** with respect to Count One (First Amendment freedom of speech portion).

2. Defendant Manuel Fernandez's motion (Doc. #84) is **GRANTED** in its entirety.

3. Defendant Craig Beloff's motion (Doc. #86) is **GRANTED in part and DENIED in part**.  The motion is **granted** with respect to Counts One (First Amendment free speech portion), Four, and Five; and **denied** with respect to Counts One (First Amendment retaliation portion), Two and Three.

4. Defendant Timothy Budz's motion to dismiss (Doc. #61) is **GRANTED in part and DENIED in part**.  The motion is **granted** with respect to Counts One (retaliation portion), Two and Three; and **denied** with respect to Count One (First Amendment free speech portion).   Budz's motion for a more definite statement is **DENIED as mo**ot.

5. Defendant Donald Sawyer's motion to dismiss is **GRANTED in its entirety**. Sawyer's motion for a more definite statement is **DENIED as moot**.

6. Plaintiff's responses construed to include a motion to amend Count Five is **DENIED** as futile.

7. The Clerk of Court shall terminate the aforementioned pending motions and withhold entry of judgment until the close of the case.

8. Defendants Budz, Beloff, GEO Group, Correct Care, and GEO Care shall file their answers and affirmative defenses within twenty-one (21) days from the date on this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of March, 2015.

*Sheri Polster Chappell*

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

SA: alr
Copies: All Parties of Record