UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

James R. Pesci,                                                  Case No. 2:10-cv-428-FtM-PAM-MRM

      Plaintiff,

v.                                                               **MEMORANDUM AND ORDER**

Tim Budz, The Geo Group, Inc.,
Correct Care Solutions, LLC, Geo
Care, LLC, Donald Sawyer, and Craig
Beloff,

      Defendants.

_____

This matter is before the Court on Defendants' Motion to Sever Claims against Defendant Craig Beloff.[1]  For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff James Pesci, proceeding pro se, initiated this action in July 2010 while he was civilly detained at the Florida Civil Commitment Center ("FCCC").  The initial Complaint named only Defendant Timothy Budz, who was the FCCC's facility director at the time the incident occurred.  The Complaint alleged that Pesci authored an FCCC newsletter called "Duck Soup."  Pesci believed that Budz violated his freedom of speech under the First Amendment by promulgating an FCCC policy that limited printing and distribution of Duck Soup.  In April 2009, Budz implemented a policy barring all FCCC residents from using paper in the FCCC's computer lab, ostensibly in an effort to limit

---

[1] Beloff, although initially represented by defense counsel, is now proceeding pro se. (Docket No. 126.)

Duck Soup's circulation. Budz believed that Duck Soup disrupted order and discipline at the FCCC and had adverse effects on the FCCC's capacity to rehabilitate residents. While this case was pending review in November 2010, Budz adopted a stricter policy that banned Duck Soup altogether, deeming it contraband.

In February 2012, this Court granted Budz's motion for summary judgment, but considered only the April 2009 policy. Pesci v. Budz, No. 10cv428, 2012 WL 397848 (Feb. 8, 2012). Pesci appealed. The Eleventh Circuit Court of Appeals reversed and remanded, directing the Court to develop the record concerning the November 2010 policy, and to address both the April 2009 policy and the stricter November 2010 policy using a standard modified from Turner v. Safley, 482 U.S. 78 (1987).[2] Pesci v. Budz, 730 F.3d 1291, 1292-93 (11th Cir. 2013). The Eleventh Circuit noted that Pesci had not amended his Complaint to include the November 2010 policy, but determined that this policy was "clearly placed before the district court" when Pesci mentioned the policy in his motion for a preliminary injunction and referred to the policy in his Pre-trial Narrative Statement. Id. at 1295.

This Court then appointed counsel for Pesci. Pursuant to the Court's direction, counsel filed an Amended Complaint (Docket No. 60). The Amended Complaint alleges that Budz violated Pesci's rights under the First and Fourteenth Amendments by

---

[2] The appellate court adopted a modified Turner rational relation standard for FCCC residents' First Amendment claims, essentially adopting the standard of review set forth in this Court's Order granting Budz's summary judgment. Pesci, 2012 WL 397848, at *6.

2

promulgating the two policies restricting, and then banning, Duck Soup. The Amended Complaint also adds several new Defendants and new claims.

Beloff, the FCCC's Director of Security, is one of these new Defendants. Count I names Beloff, along with additional Defendants, and alleges free speech and retaliation claims under the First and Fourteenth Amendments. Counts II and III of the Amended Complaint name Beloff as the sole defendant.[3] Count II alleges that Beloff violated Pesci's right to procedural due process under the Fourteenth Amendment stemming from Pesci's disciplinary hearings at the FCCC. (Am. Compl. at 14). Count III alleges that Beloff violated Plaintiff's substantive due process under the Fourteenth Amendment stemming from Pesci's disciplinary hearings at the FCCC. (Id. at 15.) The incidents giving rise to Counts II and III allegedly occurred in October and November 2013, a matter of weeks after Plaintiff learned about his successful appeal in this case.

**DISCUSSION**

Defendants Budz, Sawyer, GEO Group Inc., GEO Care LLC, and Correct Care Solutions move to sever Beloff under Rules 18, 20, and 21 of the Federal Rules of Civil Procedure, arguing that the claims of retaliation and due process violations are "wholly unrelated to the freedom of speech and press claims regarding Plaintiff's newsletter publications." (Defts.' Supp. Mem. (Docket No. 136) at 2.)

Under Federal Rule of Civil Procedure 18(a), "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing

---

[3] The Court previously dismissed Counts IV and V of the Amended Complaint, as well as all Defendants save Beloff from Counts II and III. (Docket No. 95.)

party." Thus, Rule 18(a) permits a plaintiff to bring multiple claims against a defendant. However, if joining a claim requires joining additional parties, the claim must comply with Fed. R. Civ. P. 20.

Federal Rule of Civil Procedure 20(a)(2) states that defendants may be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Joinder of parties is generally encouraged in the interest of judicial economy, subject to fulfillment of two prerequisites: those joined as defendants must be interested in claims that arise out of the same transaction or occurrence, or series of transactions or occurrences; and all parties joined must share in common at least one question of law or fact. Alexander v. Fulton Cnty., 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).

In determining what constitutes a "transaction or occurrence" under Fed. R. Civ. P. 20, the Eleventh Circuit has stated that "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Id. (internal citations omitted). "All 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." Id. (internal citations omitted). Rule 20 also requires that "some question of law or fact be

common to all parties," but "does not require all questions of law and fact raised by the dispute be common." Id. (emphasis in original) (citations omitted). It follows that under Rule 20(a)(2), a plaintiff may not bring multiple claims against multiple parties in a single action unless the "statutory nexus" is demonstrated with respect to all defendants named in the action.

Defendants argue that there is no connection between the claims against them in Count I and the claims against Beloff in Counts I, II, and III. (Defts.' Supp. Mem. at 2.) Defendants maintain that the claims against Beloff have "nothing to do with the decision to ban or limit Plaintiff's newsletters." (Id. at 4.) Plaintiff argues that the First Amendment retaliation claim asserted against Beloff in Count I and the procedural and substantive due process claims asserted in Counts II and III are related to his free-speech claims because he believes FCCC officials issued the disciplinary reports in retaliation for the litigation involving his free speech claims. Pesci asserts that all of the claims "stem[] out of the abridgment of [Pesci's] First Amendment rights." (Pl.'s Opp'n Mem. (Docket No. 144) at 3-4.)

According to the Amended Complaint, Plaintiff received his first disciplinary report on September 25, 2013, from non-party Kari Fitzpatrick for "lying to staff when Pesci said he was getting over a million dollars from GEO" due to his victory on appeal. (Am. Compl. ¶¶ 45-46.) The second disciplinary report was issued on October 1, 2013, from non-party Rick McCawley for "conspiring to have residents engage in various facility rule violations." (Id. ¶ 48.) The third disciplinary report dated October 2, 2015, from non-party "Mr. Snyder" was for possession of a jump drive that contained copies of Duck

Soup, i.e., contraband per FCCC policy. (Id. ¶¶ 51-52.) Defendant Beloff oversaw the disciplinary hearings that form the basis for the procedural and substantive due process violations alleged in Counts II and III.

Pesci's claims against Beloff in Counts II and III are "logically related" to his free-speech claims. In particular, Pesci asserts that Beloff took actions against him, such as investigating him, subjecting him to disciplinary proceedings, and otherwise retaliating against him, as a result of his exercise of First Amendment rights. Although the claims against Beloff took place years after the promulgation of the policies Pesci challenges in Count I, the claims are undeniably related to Pesci's claims in Count I. Indeed, explaining the retaliation claims to a jury would necessarily require a description of Pesci's free-speech claims. Counts II and III both arise out of the same transaction as Count I and have questions of fact in common with Count I. They therefore satisfy the dictates of Rule 20.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion to Sever (Docket No. 136) is **DENIED**.

Dated:   January 11, 2017

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

6